(No. 28617.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM ELBERT LAWRENCE, Plaintiff in Error.

*Opinion filed May 23, 1945.*

500

BENJAMIN C. BACHRACH, FRANK J. FERLIC, and THOMAS MARSHALL, all of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and JOSEPH A. POPE, all of Chicago, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The defendant, William Elbert Lawrence, was indicted in the criminal court of Cook county for robbery, and was,

in the second count of the indictment, charged with a prior conviction. He filed a special plea of immunity and also a motion to quash the indictment on the ground that the act commonly known as the Habitual Criminal Act (Ill. Rev. Stat. 1943, chap. 38, par. 602,) was and is a bill of attainder and, as such, violates not only the constitution of the United States but also the constitution of the State of Illinois. Both motions being overruled, the defendant entered a plea of not guilty, waived his right to a trial by a jury and, after evidence heard, was found guilty by the court as charged and that he had been theretofore convicted of robbery. Motions for a new trial and in arrest of judgment being overruled, he was sentenced to the Illinois State Penitentiary for a term of twenty years. The cause is here on writ of error.

The constitutionality of the Habitual Criminal Act is challenged by defendant's claim for immunity, motion to quash the indictment, motion for a new trial and motion in arrest of judgment. In each claim and motion defendant insists and contends that the act is void and is repugnant to the constitution of the United States. No evidence heard at the trial is preserved and the bill of exceptions covers the motions made by defendant.

A number of errors are assigned but in the main they present one principal contention, that the passage of the Habitual Criminal Act is equivalent to the passage of a bill of attainder and, hence, the act violates both the constitution of the United States and the constitution of the State of Illinois.

Defendant urges under his claim of immunity that privileges and immunities that are within the protection of the constitution of the United States are those "which owe their existence to the Federal government, its National character, its Constitution or its Laws;" that they include the "express limitations which the Federal constitution imposed upon the States, for instance, the prohibition against

ex post facto laws, bills of attainder, and laws impairing the obligation of contracts." Section 10 of article I of the United States constitution, in part, provides: "No State shall * * * pass any Bill of Attainder, ex post facto Law;" and section 1 of the fourteenth amendment to the Federal constitution, in part, provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." There can be no question that these privileges and immunities are protected by the constitution of the United States, but whether or not the act of 1883, as amended in 1941, known as the Habitual Criminal Act is a bill of attainder and whether the act and the indictment laid thereunder abridge the privileges and immunities of the defendant, present entirely different questions.

The defendant cites excerpts from the case of *Cummings* v. *Missouri*, 71 U. S. 277, 18 L. ed. 356. We do not think what was said in that case is in any way controlling here for the reason that the facts are not comparable and what was said arises from entirely different circumstances. In the case cited a priest of the Roman Catholic Church was preaching as a priest and minister of that religious denomination without having first taken an oath that he had not theretofore been in armed hostility to the United States or to the lawful authorities thereof and that he had never, by act or word, manifested his adherence to the cause of the enemies of the United States, foreign or domestic, which was required by the new constitution of the State of Missouri, adopted shortly after the Civil war. The court there held that persons could not be held for previous acts without a trial and that it was not within the power of the legislature to deprive a man of his profession because he did not take the provided oath. It is significant in that case, however, that the court did hold that a bill of attainder is a legislative act which inflicts punishment without judicial trial. (5 Words &

Phrases, 454.) To the same effect is *Losier* v. *Sherman*, 157 Kan. 153. The *Cummings case* determined only that persons could not be held, for acts already committed, without a trial, and that the legislature did not have power to take from a man his profession simply because he did not take the required oath.

Defendant contends that what was said in the *Cummings case* and the reasoning therein is contrary to what was held in the case of *McDonald* v. *Massachusetts*, 180 U. S. 311, 21 Sup. Ct. 389, 45 L. ed. 542, where it was held that the defendant was not more severely punished because of any prior act but was being punished more severely for the second offense, alone. Defendant further contends that the theory that such increased punishment in such cases is punishment solely for the second offense, is erroneous and has been wrongfully followed ever since the *McDonald* decision; and contends that the very same reasoning which defeated the test-oath provisions of the Missouri constitution was entirely disregarded in the consideration of the Massachuetts Habitual Criminal Act; that the test-oath conviction and the Massachuetts conviction are alike in that they punish for the "new crime." As we glean from defendant's brief, his contention is that if the reasoning in the *Cummings case* is applied to the *McDonald case*, the decision there is erroneous. In other words, each case presents a bill of attainder for consideration. The facts in the two cases are dissimilar and we are not in position to say that the reasoning as followed from the facts in the *Cummings case* is of such import as to nullify the sustained reasoning from a different set of facts arrived at in the later *McDonald case*. There the court, passing upon an 1887 statute of Massachusetts which provided, "Whoever has been twice convicted of crime, sentenced and committed to prison, in this or any other State, or once in this and once at least in any other State, for terms of not less than three years each, shall, upon

conviction of a felony committed in this State after the passage of this act, be deemed to be an habitual criminal, and shall be punished by imprisonment in the State prison for twenty-five years," held the act valid.

The court was there passing directly upon the provisions of an habitual criminal act and, by clear and unequivocable language, said: "The fundamental mistake of the plaintiff in error is his assumption that the judgment below imposes an additional punishment on crimes for which he had already been convicted and punished in Massachusetts and in New Hampshire. But it does no such thing. The statute under which it was rendered is aimed at habitual criminals; and simply imposes a heavy penalty upon conviction of a felony committed in Massachusetts since its passage, by one who had been twice convicted and imprisoned for crime for not less than three years, in this, or in another State, or once in each. The punishment is for the new crime only, but is the heavier if he is an habitual criminal. Statutes imposing aggravated penalties on one who commits a crime after having already been twice subjected to discipline by imprisonment have long been in force in Massachusetts." The court there further said, "The allegation of previous convictions is not a distinct charge of crimes, but is necessary to bring the case within the statute, and goes to the punishment only." We think the reasoning in that case is sound and what was there said is controlling as to the validity of the Habitual Criminal Act under consideration.

This court has repeatedly said the Habitual Criminal Act does not create a new or independent crime. It merely prescribes circumstances wherein one found guilty of a specific crime may be more severely penalized because of a previous conviction. The punishment is for the new crime only, but the penalty is made heavier by statute because the defendant is an habitual criminal. The prior conviction is no ingredient of the main offense charged but is

merely a matter of aggravation going solely to the punishment to be imposed. *People* v. *Atkinson,* 376 Ill. 623; *Graham* v. *West Virginia,* 224 U. S. 616, 32 Sup. Ct. 583, 56 L. ed. 917; *McDonald* v. *Massachusetts,* 180 U. S. 311, 21 Sup. Ct. 390, 45 L. ed. 542; *Goodman* v. *Kunkle,* 72 Fed. 2d 334; *Ex parte Bailey,* 60 Okla. Crim. 278, 64 Pac. 2d 278; *Ex parte Kuwitzky,* 135 Neb. 466, 282 N. W. 396.

Defendant has stated that the essence of a bill of attainder is the condemnation by statute without a judicial trial. Under the holding in the *McDonald case* the punishment is for the new crime, only, but is the heavier if he is an habitual criminal, and in this respect he has been given a judicial trial. We do not see how it could reasonably be said that the defendant is condemned by a statute without a judicial trial.

It is urged by the defendant that the Habitual Criminal Act attaints all of that group of persons who have been convicted of crime and enhances penalties for that attainted class of persons, and that, because of the fact that a greater degree of punishment is provided for those of the class who have been previously convicted, the statute is unconstitutional as being a bill of attainder. This court has had occasion previously to pass upon the constitutionality of the Habitual Criminal Act of this State and the act has been upheld as being a constitutional statute. *(Kelly* v. *People,* 115 Ill. 583.) The court there, in speaking of the Habitual Criminal Act, stated that similar statutes have been adopted in many of the States and that they are upon the principle that it is just that an offender should be punished more severely for a second offense. To the same effect we find *People* v. *Gowasky,* 244 N. Y. 451, 155 N. E. 737. In the case of *People* v. *Atkinson,* heretofore cited, this court held that a prior conviction is no ingredient of the main offense but is merely a matter of aggravation going solely to the punishment to be imposed, and we do not see how that could attaint the class of persons referred to,

Defendant urges that the requirements embodied in the act of 1883 and as amended in 1941, create a parallel condition as shown in the case of *Tot* v. *United States,* 319 U. S. 463, 63 Sup. Ct. 1241, because the act here under discussion requires that the indictment set forth "in apt words" the prior conviction or convictions, and judgment or judgments. An analysis of this case reveals the dissimilarity. The *Tot case* involved the construction and validity of section 2(f) of the Federal Firearms Act, (15 U.S.C.A., par. 902(f),) which is, "It shall be unlawful for any person who has been convicted of a crime of violence or is a fugitive from justice, to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped. or transported or received as the case may be, by such person in violation of this act."

The court, in that case, was passing upon the presumption that the possession of a firearm or ammunition by one charged with a crime of violence or being a fugitive from justice, shall be presumptive evidence such firearm or ammunition was shipped or transported in violation of the act, and the court there said: "The due process clauses of the Fifth and Fourteenth amendments set limits upon the power of Congress or that of a State legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact upon which guilt is predicated." It can readily be seen the court held that proof of the fact of possession was not proper evidence to prove the existence of the ultimate fact on which guilt is predicated, *i.e.,* that the firearm was transported in interstate commerce.

By the provisions of the act under consideration in the instant case, the proof of a former conviction is not evidence of the existence of the ultimate fact on which guilt

is predicated. It is true the court, in the *Tot case*, in passing upon the questions there, said that, even though the rule was reasonable in itself, it could not be sustained in view of the handicap placed on the defendant whose evidence as to prior acquisition of firearms or ammunition discredited him in the eyes of the jury before his testimony was given. It must be conceded that this presents some difficulty in the trial of cases under the Habitual Criminal Act, but such acts have been repeatedly held valid by both the State and Federal courts. We do not think what was said there is controlling in view of other holdings of the court where habitual criminal acts were under consideration and held valid.

In the case of *Graham* v. *West Virginia*, 274 U. S. 616, the court said: "If a state adopts the policy of imposing heavier punishment for repeated offending, there is manifest propriety in guarding against the escape from this penalty of those whose previous conviction was not suitably made known to the court at the time of their trial. Otherwise, criminals who change their place of operation and successfully conceal their identity would be punished simply as first offenders, although on entering prison they would immediately be recognized as former convicts. It is to prevent such a frustration of its policy that provision is made for alternative methods: either by alleging the fact of prior conviction in the indictment and showing it upon the trial, or by a subsequent proceeding in which the identity of the prisoner may be ascertained and he may be sentenced to the full punishment fixed by law. (*Plumbly* v. *Com.* 2 Met. 413, per Shaw, Ch.J.) In the latter proceeding, as well as in the former, the fundamental rights of the defendant with respect to the ascertainment of his liability to the increased penalty may be fully protected."

It will be observed that the propriety of alleging the fact of prior conviction in the indictment, and showing it

upon the trial, was specifically recognized as being proper. We think that in the trial of such cases instructions properly tendered would overcome the possibility of the defendant not having a fair and impartial trial where previous convictions, as required by the statute, are set forth in apt words in the indictment. We might add that no such questions are presented here because we do not have a bill of exceptions as to the proceedings of the trial.

In support of defendant's contention that there is no such thing possible as a fair and impartial trial where previous convictions are set forth in apt words in the indictment, he cites the cases of *People* v. *Lund,* 382 Ill. 213, and *People* v. *Gawlick,* 350 Ill. 359. In the *Lund case* the second count of the indictment was based upon a prior conviction and we held the motion to quash the second count should have been sustained because it failed to state that the offense of petit larceny was committed by a person over the age of eighteen years. The second count being quashed, left only the first count of the indictment which did not charge the defendant with being an habitual criminal. Therefore, the court held it was highly improper to introduce upon the trial evidence that the defendant had been previously convicted of petit larceny. The holding in that case, as well as the holding in the *Gawlick case,* cited by the defendant, supports only the long-established and recognized rule of law that evidence of a distinct substantive offense in no way relevant to the matters in issue should not be admitted. Neither of the cases are comparable to cases where both the indictment and the trial come under the Habitual Criminal Act. It is true the *Lund case* states: "To the mind of the average person, proof that the accused committed a similar offense, or one equally heinous in character, tends toward the belief that he is guilty of the crime charged." It might as well be said, although in a lesser degree, that to the mind of the average person the existence of an indictment in a case

tends toward the belief that the one charged is guilty of the crime. We think this has been so recognized and therefore instructions have been given to the effect that the indictment is no evidence of guilt and should not be so considered by the jury. *People* v. *Foster,* 288 Ill. 371.

We think that an instruction could properly be given that any evidence of the former offense, as alleged in the indictment, should not be taken into consideration as proof of the offense for which he is on trial. In any event, under proper instructions, we think the jury would necessarily understand that proof of former charges, as shown in the indictment, was not to be considered proof of his guilt of the second offense. In addition, the accused is always protected by his presumption of innocence and must be proved guilty by the evidence in the record beyond all· reasonable doubt.

Defendant contends that the act of 1883, in its original form and as amended in 1941, lays an unequal hand upon those who have committed intrinsically the same quality of crime; that the act attaints and provides increased penalties for one and not the other similarly situated; that the act therefore violates the "due process of law" clause and violates the "equal protection of the laws" clause of the Fourteenth amendment to the constitution of the United States. From this contention defendant apparently means that because all felonies are not contained in the Habitual Criminal Act such classification results in discrimination. We think, under the holding of this court on the question of classification, that the classification of the objects of legislation is not required to be scientific, logical or consistent, if it is reasonably adapted to secure the purpose for which it is intended and is not purely arbitrary; and the classification need not be so broad as to include all the evils which might possibly be brought within its terms.

It is a question for the legislature to determine whether an evil exists and what means should be adopted to pre-

vent it, and its acts will not be interfered with unless they are clearly in violation of some constitutional limitation. (*Stewart* v. *Brady,* 300 Ill. 425; *People* v. *Stokes,* 281 Ill. 159.) The legislature may consider degrees of evil and is not bound to pass such a law as will meet every case. (*Stewart* v. *Brady,* 300 Ill. 425; *People* v. *Stokes,* 281 Ill. 159.) The police power of the State exists without reservation in the constitution. It lies at the very foundation of governmental purpose to protect and provide for the safety and good order of society. The fact that in doing so the liberty of the individual is restrained does not in itself render an act passed under police power invalid. (*People* v. *Johnson,* 288 Ill. 442.) This court, in sustaining acts which provide greater punishment for habitual criminals, has uniformly held that such acts do not violate constitutional provisions. (*People* v. *Alterie,* 356 Ill. 307; *Featherstone* v. *People,* 194 Ill. 325.) We think the legislature may properly make classification for the suppression of evil and make the necessary provisions for its suppression. (*People* v. *Saltis,* 328 Ill. 494.) In this instance we do not think the legislature has acted arbitrarily, and defendant's constitutional rights are not violated.

Defendant contends that by the act he is denied a trial by jury as heretofore enjoyed. He is not in a position to avail himself of this defense because he himself waived the jury and submitted his cause to the court.

Defendant's position that he is subject to increased punishment because he has been previously convicted and that because of this classification the act is, in effect, a bill of attainder, cannot be maintained. He has stated that the essence of a bill of attainder is the condemnation by statute without a judicial trial. Here, it cannot be said that defendant has not had a judicial trial. There does not appear to be any substance to the theory advanced that a person previously convicted is attainted, and, as one of a

class of attainted persons, is punished for the previous offense. The Habitual Criminal Act does not punish for the prior or preceding offense. The act increases the punishment for an act committed if the offender has previously been found guilty. (*People* v. *Atkinson,* 376 Ill. 623.) True, he has been subjected to increased punishment because of the fact that he has been previously convicted. We perceive that it was the intention of the legislature, expressed in the act, to invoke more severe penalties upon those convicted of multiple offenses than upon those offending for the first time. It is within the just province of the legislature to provide for increased penalties for those who persist in the commission of certain crimes. Society is entitled to protection from habitual criminals. The inflicting of the increased punishment was imposed as a result of a judicial trial and not without the benefit of the same. The inflicting of the increased punishment as a result of defendant's previous conviction is in accordance with the Habitual Criminal Act and violates none of the defendant's constitutional privileges or immunities.

The judgment of the criminal court of Cook county is, therefore, affirmed.

*Judgment affirmed.*